Thank you. Good morning, Your Honors. My name is Matthew Campbell. I represent Defendant Appellant Toise Gladney, and I would like to reserve two minutes for rebuttal. Appellant comes before this Court today because he was denied a hearing regarding the critical facts upon which the District Court denied his motion to reduce his sentence. Once the District Court decided that its decision would rest on the subsequent conviction, an issue which neither of the parties addressed in its briefing, it was incumbent on the District Court to conduct a hearing or at least seek input from the parties as to the facts. Had the Court held a hearing or even invited a written response... Counsel, didn't he waive the right to hearing? Your Honor, I believe what was done at that time was that what I would call a conditional waiver was entered, where it was stated that if the government agreed to recommend a low-end sentence, that a hearing would then be waived. However, my reading of that waiver was that it was clearly a conditional waiver based upon the presumption that the government would recommend a low-end sentence. At the time that that waiver was entered, the plea agreement previously had stated clearly that the government would recommend a low-end sentence at whatever range was ultimately determined to be correct. So our position would be that it was a conditional waiver. It was a reasonable conditional waiver under the circumstances based on the plea agreement. So you can't tell whether that waiver was good until after the decision is made, right? Is that what you're saying? After which decision is made? I'm sorry. The Court's decision. No, that's not what I'm trying to say. What I'm trying to say is that the waiver was based on the presumption that the government would recommend a low-end sentence. That was what the plea agreement called for back at the time of the original plea. So Mr. Gladney, through counsel, presumed that the government would do what it said it would do as part of the plea agreement and recommend a low-end sentence. When the government didn't do so, that condition didn't ripen. So therefore, our position is that there was no waiver. Well, what do you do with Rule 43? In regard to Rule 43, our position is that the subsequent amendment to U.S. Sentencing Guideline 1B1-10 included the 3553A factors explicitly. I understand that the government's position is that they had always been included under 3582. However, I believe that if in reading the 3582 factors, 3582 referenced the 3553A, it states to the extent that they are applicable, the factors may be included. That language is quite different than the 1B1.10 language, which says whether a reduction is warranted and to the extent of such reduction. So I believe there's a difference there, and I think that difference is fairly attributable to Booker and the subsequent changes. 1B1.10 obviously has been amended since Booker. Criminal Rule 43 has not. So I believe that explains the difference, and our position is that the 1B1.10 language is actually broader and would require a more factually intensive view of the situation, which, again, would support either a hearing or at least the opportunity to respond. The government cites several cases stating that there's no right to a hearing on a motion under 3582, specifically citing United States v. Townsend. However, in Townsend, this Court had determined that a retroactive amendment at issue didn't apply to the appellant, so a hearing was not necessary there based largely on legal impossibility of the claim. Similarly, in LaGrie, which the government also cites, the Court simply found that the facts had been sufficiently presented at the prior hearing so that there was no need to have an additional hearing since there was no indication that further mitigation would be raised. In this case, we have quite a different circumstance where the Court reached out to facts which were never discussed by the parties, had never been raised by the parties, and I believe it's worth noting that those facts essentially were the Court's entire rationale in rejecting Mr. Gladney's motion for a reduced sentence. The Court never cited to any original factors raised under 3553. The Court simply stated that there had been a subsequent conviction. Under U.S. v. Cardi, obviously, it's procedural error not to outline the facts that the Court is relying on, so I think it's safe here to say either the District Court was relying solely on the subsequent conviction in denying the motion or the Court would then have committed procedural error. Presumably, we're not going to presume the Court committed procedural error, so therefore we must assume that the Court only relied on that single fact, which is the subsequent conviction. Well, both sentences were within the appropriate guidelines, right? Both sentences were within the appropriate guidelines. However, I think it is noticeable that the original sentence was at the low end of the guidelines, whereas the subsequent sentence was at the high end. The only change in circumstances between those two was simply the subsequent conviction. Well, let's assume you had a hearing on that. What would you have offered in evidence to suggest that the Court should not have taken the subsequent conviction into consideration? I think it would have married discussion, first of all, to ensure that the Court considered the evidence that had been presented at the original hearing, but more importantly, it's unclear from the Court's order that the Court had considered the punishment that Mr. Gladney actually suffered as a result of that subsequent conviction, specifically a consecutive four-month sentence. I believe it was the loss of telephone privileges for a year, followed by also the loss of visits for a year, the loss of all but family visits for the subsequent year. Right. So there was significant punishment. Again, nowhere is that reflected that the Court considered that in the Court's order, that it considered any of these factors. Well, in the usual sentencing, when the Court considers, for instance, criminal history, right, calculation doesn't consider what the punishment, it just considers the conviction. You know how many days of good time credits were lost or anything like that? Just if there's a conviction, there's a conviction. That's how it works, at least on criminal history. You don't examine, you don't look behind the conviction. Your Honor, I believe that's true as a general matter. However, in this case... Well, why should he have to look behind the conviction here? To the extent that the Court is exercising discretion based solely on the fact that a conviction exists... The Court can exercise discretion to, you know, vary below the criminal history, right? Certainly. But I believe that to the extent that the Court used that conviction as the basis, that it would have behooved the Court to at least get input from the parties as to whether... What you're saying is the Court cannot, as a per se rule, rely only on the conviction without examining, you know, what the punishment was. I'm... My position is not that the Court couldn't have ultimately reached the resolution that it did, only that a hearing with some input from the parties was required to flesh out the circumstances. I'm not necessarily trying to say that the Court couldn't, under any circumstances, have done what it did. You have about a minute and a half left. Do you want to save it for... I would like to. All right. Okay. Thank you, Counsel. Mr. Ellis? Good morning. My name is Robert Ellis. I'm an assistant with the Eastern District of Washington, and Mr. Gladney's case was mined from the outset back in early 2005. I don't have much to add to my brief. I just want to make... In going and getting prepared, I just want to make sure the Court didn't think that anybody was blindsided in this process in our district. And I specifically want to refer you to exhibit... to Mr. Gladney's opening brief. You'll see it's a worksheet. Now, when the Amendment 706 came down in our district, we approached this in a relatively collegial way. We sat down with Ms. Staub, who authored this brief, her supervisor, Mr. Peven, myself, and the U.S. Attorney's Office, and a couple of folks from the Probation Office, and had to make some quick decisions. One was, how do we treat the cases where people could qualify for immediate release? So we addressed that first. And then we said, well, how are we going to address the other people as the cases arise? And the Probation Office took upon itself to, in that latter series of cases, that we didn't have to immediately react to, prepare this worksheet in all the cases where the defendants were not scheduled for immediate release because of the amendment, but we could take the time and work them through a relatively normal process. Mr. Carter was the author of this particular worksheet. It's my recollection he did most of them on these amendment cases. The date on this particular sheet is March 26th. Those were normally transmitted to us by fax or by e-mail. Ms. Staub then filed her motion, I think it's on April 8th if I remember the record correctly, approximately two weeks later. So the defense, the prosecution, and the court had this worksheet before the motion was ever filed. So this conviction and this bargain for contraband in the federal prison was the elephant in the middle of the living room, as far as I'm concerned. Everyone knew about it. Just nobody talked about it. And so it was not a surprise to anyone. When you say everyone knew about it, first of all, it's not on this worksheet, right? It is. It's footnotes one and two. So we both talk about the conviction, Your Honor, down at the bottom, and then it talks about the DOP discipline, which was in addition to the conviction. All right. So that references the conviction. Yes, sir. But you didn't raise that in your opposition to the sentence reduction. Because that's not really the issue. But in preparing, I thought maybe the judges were thinking this was blindside or something like that. I understand that. But I think the defense objection is if the judge were going to rely on that elephant in the room, that they ought to air it out at a hearing. And he's not on notice that you're raising the issue because you didn't raise it in your brief, and the Judge Suis Bondi cites it in the order. So whether or not it would have resulted in a different sentence or a different decision, I don't know. But I think that's the argument. Every time we litigate, Your Honor, we have facts, and we choose to stress those facts we think are most important to our side. The point I'm trying to make is Mr. Gladney's attorney had these facts and could have mentioned them in her opening. She didn't. I took the position I took on a number of these cases were in prosecuting the individuals. I had them plead to a count that did not require the five-year mandatory minimum. A lot of these – Mr. Gladney was a group, a member of a group that we intentionally targeted in the Tri-Cities. This information about the prior conviction was known to the defense at the time of the waiver of the hearing? Do you know? All I can tell you, Your Honor, is this was available in late March, March 26th is the date on it, and that Ms. Staub filed her motion on April 8th, roughly two weeks later. Well, when he says available, how? I mean, on somebody's website or what? No, it was transmitted to us. Most of them came to me via email from Mr. Carter. All right. I think a couple of them may have been faxed to me by Mr. Carter when time was short. So these, what you call worksheets, are transmitted to the prosecutor and the defense counsel? Is that what you're saying, routinely? Yes, sir. Yes. And the data presumably is transmitted on or near the date of the preparation? Correct. All right. Correct. Well, your position was the hearing wasn't necessary anyway, which may be true as a matter of law. That's something we'll have to consider, right? That's correct, Your Honor. My position is a hearing is not required in these situations, and most of the time on these amendment cases we did not hold a hearing in our district. I mean, the additional wrinkle in this case, and not to beat a dead horse, is that Judge Suisbande raises this extra fact, which then doesn't have the benefit of briefing or a hearing by presentation by either party. I'm not faulting you. You made a decision of what to present to the judge. But I guess that's the additional wrinkle in the case. Well, a difference without a meaning in my mind, because at a typical sentencing we have a pre-sentence investigation report, and we certainly don't raise every issue, even though there may be a long string of criminal convictions. Right. But then if there's a recommendation or there's some disagreement by the defense, the defense has an opportunity to object to the recommendations in the PSR. I filed my response in which I recommended the high range. Admitting the amendment applied, I recommended the high range. They had the opportunity to respond and didn't. Any further questions? Okay, I think we have your argument in the House. Thank you. Thank you. Counsel Rebondo. Thank you, Your Honor. Just briefly, I wanted to clarify, our position is not necessarily that in every circumstance, in every case, a hearing will be necessary. Our position is much more limited than that, that under these circumstances where additional facts were raised, so it was funded by the court, that the parties at least deserve the opportunity to respond. And perhaps that could have even been done on paper. But we do believe that an opportunity to respond did exist. And I would like, although it wasn't cited in the briefing, in preparing for argument I did come across the case of U.S.V. War, W.A.R.R., which is at 530 F3rd 1152. And in that case, a panel of this court discussed a situation where the court brought up a Bureau of Sentencing and the court did, in fact, find that it was error for the district court to bring it up. Ultimately, it wasn't reversed. It was a plain error case. But there is case law that says that if the court is willing, is going to bring up additional facts, that the parties should at least have an opportunity. And there's discussion in that case of whether or not a continuance is necessary. Let me ask you a question on a related point, which I forgot to mention earlier. We have a recent case now that says U.S. versus Lowell is still a good case. Lowell says that we don't have a jurisdiction over a case in which the district court declines to exercise its jurisdiction on whether to reduce the sentence, which was this case, right? He said in so many words, I decline to exercise my jurisdiction to reduce the sentence because, and then he went on to say that. Why doesn't Lowell apply in this case to deprive us of jurisdiction to review that discretionary decision? Your Honor, I believe that, first off, I believe Lowell would apply to situations in which one is simply bringing what I would call a substantive challenge to the exercise of discretion, as opposed to the procedural issue as to whether a hearing is necessary. As I read Lowell, it reflects more upon the idea of saying, well, suppose he just said, well, I exercise my discretion not to reduce the sentence. We wouldn't have jurisdiction, right? So what you're saying is if he gives a reason, that gives us jurisdiction? No, Your Honor. I would actually argue that Lowell was in fact, has in fact been essentially overruled in the interim in the Colson case. That's not what Colson tells us. I mean, that's binding on us. The Colson case, I believe, is currently, there is a petition for re-hearing and re-hearing on bunk, and that's specifically related to the issue of whether the cases that Lowell relied on, which I believe was U.S. v. Reed, whether that case was effectively overturned by the decision in U.S. v., and I don't know the pronunciation, Plouffe, P-L-O-U-F-F-E, which I believe came from this court in 2006 or perhaps later, which essentially said that Reed is no longer good law in light of Booker and those developments, and were I raising that issue squarely, that's clearly what I would argue. Well, maybe we should wait to see what happens to that petition in Lowell, or Colson, I mean. To the extent that substantive relief is at issue, yes, but I do believe that where we're simply challenging procedures, I don't believe that Lowell is at fault. Thank you. Thank you. Thank you. The case just will be submitted for decision. We'll proceed to the next case on the oral argument calendar, which is United States v. Jackson. We'll wait until Mr. Mercer gets up here. Good to see you both from Montana. A lot of Montana cases yesterday. Five of your assistants, Mr. Mercer. Mr. Donohue, go ahead. Thank you, Your Honors. I'm happy to be here in Seattle this morning. The controversy here centers on whether this individual was subject to a statutory sentence such that he could be categorically disqualified from resentencing under Amendment 706, and Judge Lovell made that ruling. I think that ruling appears clearly in his reasoning. The facts of the case are worth stating real quickly. At the original sentencing, there was a downward departure motion by the United States to come off the mandatory minimum. That was extensively considered by the district judge, Judge Siebel, in the case. That motion was granted, and in the end, the mandatory minimum sentence was not imposed in favor of a lighter sentence, a 90-month sentence. Judge Siebel, in that original sentencing, and I think I want to stress this, after post-sentencing, post-grant of the 5K, indicates in sort of a meticulous fashion that the court went through the 3553A factors, considering among those factors the applicable guideline range. But at the end of the day, it was a mandatory minimum case, wasn't it? It was, Your Honor. It was a mandatory minimum case. But I guess my problem with the reasoning is that the application note seems to discuss that in terms of present tense. Is the individual presently subject to a mandatory minimum? And the answer to that question is clearly no, presently. Well, but you get beyond that, and it's not only that it's a mandatory minimum case, but his sentence, I think this is the government's position, was not based upon the guideline, right? It was based upon the motion, which had nothing to do with the guideline. Well, it wasn't. I guess I would respectfully disagree with that. This is a post-Booker sentencing, the original one as well. This is not a sentencing that straddles pre-Booker and post-Booker. In other words, the original sentencing, pre-Booker, and then something happening post-Booker. Booker was taken into account. It was the law at the time of the original sentencing. And that's, I think, the subtle point that I want to stress here, is that Judge Siebel recognized that, irrespective of ALT, and we discussed that, the United States raised it, I addressed it in the reply brief. Irrespective of ALT, he had to go through the 3553A factors and could have, had he wanted to vary down further, chose not to. And I made that concession in the reply brief. But nevertheless, that's the type of sentencing that's in play here. Well, you're almost arguing formal over substance. Because he could have said, well, I'm not going to grant a departure, but I'm going to vary under 3553. If he said that, it would be okay, right? From the government's point of view. If he said that, that would be okay from the government's point of view. If he had varied down to the guideline range? Or whatever. Is that what you're saying? I mean, we're 30 months out from the top end, or three months out, I'm sorry, from the top end of the guideline range, the applicable guideline range, under anybody's analysis here. So if Judge Siebel had come down that far and articulated a basis 50-50 somehow, and said I'll depart down based on the cooperation 50 percent, and I'll come the other 50 and I'll reach the top end of 87, were those the facts, I think it's entirely clear here that 706 would apply, and we'd have to bump that guideline range down. Just because Judge Siebel rejected the vary down, considered it, and decided not to, doesn't mean that the sentence wasn't based on the applicable guideline range. That's my point. But under your logic, wouldn't that mean that every mandatory minimum case would have to be considered a guideline case? No. Why not? Because the qualifying fact is that there was an actual come down from the mandatory minimum. If we change the facts here and said that 5G 1.1 says that when the statutory minimum is higher than the top end of the guideline, then that's the guideline sentence. We could be here today on those facts. I don't have an argument here because that's a statutory driven sentence. 706 doesn't apply to that. But that's not what happened here. But to argue your side, the guidelines say that if the statutory minimum exceeds the guideline range, then the statutory minimum becomes the guideline, right? Correct. So isn't that a guideline sentence? Well, it is to a point, but then again, it's not. It's 120 because we have to go up and be there, and we did that here. The top end of the guideline range was 87 months. The mandatory minimum was 120. So we had to go up there. That was the guideline sentence. But we moved off that fixed point by virtue of the departure motion. Which means it's not a guideline sentence. Well, which means that it's not a fixed point when you come down to the 90. That's all I'm saying. And if you look at the statutory language of 3582C2, it clearly says that you can grant this departure if the amendment is applicable, so long as it's consistent with the policy statements. After BOKER, that's not a fixed point. That 90 months is not a fixed point. So there would be nothing inconsistent. You can't have friction between something that isn't fixed, two points that aren't fixed, if that's making any sense. I understand your argument. But, you know, when you say after BOKER, the language of the statute, though, is you're supposed to look at the guideline, right? Not what you can do after BOKER. Isn't that the language of the statute? Well, all I'm saying here is, yes, I would agree with that, Your Honor, yes. But what I'm saying is, is that if in some ways, and this may be, I'll concede this may be kind of an unfair characterization, but I think Judge Siebel, if you read that record for what it says impliedly, when he sentences finally in the original sentencing, he's taking into account the guideline range somehow. Maybe, and this might be the unfair part. When he says he's taking into account the guideline range somehow, what range is he taking into account? The 70 to 87 months, 71 to 87 months. He's taking that guideline range into account, even if he's using it as an outer perimeter. You mean when he settles on the 90? Correct. When he agrees to the 90, he's taking that range into account? Correct. Well, how do you know that? Well, that goes back to the point that I'm saying 90 months is not a fixed point. And if he had that in his mind, and now that guideline range is down to 57 to 71, that could make a difference. All I'm saying is we could lose this on a hearing, or we could lose this based on a fairness argument when the district court exercises its discretion. But what we're here on, and that would address the jurisdictional issue, is a categorical exclusion. I am not permitted to reduce this sentence. I think that's a fair reading of the district court's order under 3582C2. And that can't be the law is all I'm saying. Well, it's difficult to get over the fact that the sentence was based on a waiver of the mandatory minimum. And whatever thinking went into the sentence that he imposed, it's difficult to get around the fact that it was a sentence based on a waiver of the mandatory minimum. It was, Your Honor. It was. I agree. Final reserve? I would, please. Thank you. Mr. Mercer? May it please the Court, I'd like to briefly focus on the terms of the statute 3582C2, which I think is very clear. It states a term of incarceration may only be reduced at resentencing when a defendant was sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission. And it's that based on language where we have the greatest disagreement with Mr. Jackson. This, as I think the Court has already suggested in some of its questioning, focuses really on a mandatory minimum context in which statutes have guided everything that happened at sentencing. First, you have a five-year mandatory minimum based upon drug quantity. Secondly, you have an 851 filed by the government which changed that sentencing range based, excuse me, not the range, but based on statute from five to ten years. And then finally, you have a government motion pursuant to 3553E that gives the Court the authority based upon the substantial assistance of the defendant to go below the ten years. The entire context of this has nothing to do with the guidelines nor the potential application of, retroactive application of the Amendment 706, but in fact totally tied to that guideline range. And I think although Mr. Jackson in the reply brief excerpts some of Judge Siebel's comments, I think there are a number of other things that I direct the Court's attention to that are really dispositive on the question of whether this is something that's subject to 3582. First, on page eight, this is all in the supplemental excerpts, the transcript, there's a sidebar at which point the government, the defense, and the Court are discussing the substantial assistance motion. And on page eight, the Court says. Which line are you in? Oh, we can find it. Go ahead. Line 21. Okay. Any reduction in this case will not require reduction in the offense level because the offense level is calculated from 70 to 87. Then on page 10, and this is, starts at line six. The Court notes it's reflected in his criminal history and the 851 information. That's why he's looking at 120. So that's why for all practical purposes, the 70 to 87 months is irrelevant, number one. And finally, on page 15, and this is beginning at lines 10. I think a sentence of 90 months will reflect the seriousness of the offense, promote respect to the law, and provide just punishment. And on down below, he says, this is the guideline range he's calculated. However, he's subject to statutory minimum mandatories. I think such a sentence will avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. The entire colloquy at the sidebar and then following on suggests that the Court tied the sentence in this case to that 120-month statutory minimum. And as Mr. Donahoe has reflected in his argument, the fact is that even though the Court had authority pursuant to the government's motion, the Court didn't go within the guideline range. The Court stayed above the guideline range. And then the final point the government would refer the Court to in the record is the judgment, excerpts of record 36. And the Court in the judgment says the 90-month sentence imposed was above the high end of the guideline range because the Court essentially applied the 5K1.1 motion to reduce the mandatory minimum sentence. What page is that on? 36. Page 36? All right, go ahead. The excerpts of record.  Oh, yeah, I see it. I see it. So with those points, it's the government's position that the defendant fails to meet his burden under 3582 and that the district court should be affirmed. This really isn't a low case. There's no exercise of discretion here, right? We preserve that argument in our briefing, Your Honor, but we believe that this issue is one that the district court should be affirmed on based upon this argument. I don't believe the Court has to go to low. If the Court wishes, we did preserve it, but we believe we prevail even on an abuse of discretion standard. Out of curiosity, has the District of Montana undertaken a similar – you've heard the description of what the District of Eastern Washington has done. Have you undertaken a similar inquiry with the cases on this? The good news for the District of Montana is we have so few crack cocaine cases that the significance of this amendment has been minimal. It's a small number of cases, and through discussions between both the probation office and the Federal Defender's Office, I think we've been able to manage a very small caseload without much difficulty. Any further questions? No. Thank you. Thank you. Rebuttal? Your Honor, I'm ready to submit it. I didn't hear anything new there, unless there's any other question. Any further questions? Thank you both for your arguments. The case will be submitted.
judges: B. Fletcher, Tashima, Thomas, Cjj